# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JEFFREY W. VAUGHN,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:25-cv-01243-SAB

ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

(ECF Nos. 12, 14)

Plaintiff Jeffrey W. Vaughn ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the final decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in the analysis of the opinion of Kellie Sulier, Psy. D., as well as the incorporation of a certain limitation into the RFC.

For the reasons explained herein, the Court will reverse and remand the decision of the Commissioner.

# I.

# BACKGROUND

## A. Agency Procedural History

On November 3, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging disability beginning November 21, 2018, for both applications. (ECF No. 11, Administrative Record ("AR"), 19.) Plaintiff's application was initially denied on January 10, 2024, and denied upon reconsideration on January 10, 2024. (Id.) Plaintiff requested a hearing before an ALJ. On July 23, 2024, Plaintiff, represented by counsel, appeared via a telephonic hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Linda Ferra testified. (Id.) On September 19, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 32.) On July 18, 2025, the Appeals Council denied Plaintiff's request for review. (AR 3-8.)

## B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through June 30, 2021, and he had not engaged in substantial gainful activity since November 21, 2018, the alleged disability onset date. (AR. 22.) The ALJ found that Plaintiff had the following severe impairments: obesity; lower extremity polyneuropathy; ankylosing spondylitis; psoriatic arthritis; asthma; mild tricompartmental osteoarthritis of the right knee; AC joint separation of the right shoulder; lumbar degenerative disc disease with fusion at the sacroiliac joints; adjustment disorder with mixed anxiety and depressive symptoms; and major depressive disorder. (AR 22-23.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he can occasionally balance as defined in the SCO, he can occasionally stoop, kneel, crouch, and crawl; he can occasionally reach overhead with the dominant right upper extremity; he can have

occasional exposure to extreme cold; he should avoid workplace hazards, such as unprotected heights or moving machinery; he should avoid exposure to dusts, odors, fumes, gases, poor ventilation, and other pulmonary irritants; and he can understand, remember, and carry out simple instructions. (AR 26.)

The ALJ found that Plaintiff was unable to perform any past relevant work, he was 42 years old on the alleged onset date, and had at least a high school education. (AR 30-31.) The ALJ discussed that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not the claimant has transferable job skills. (AR 31.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from November 21, 2018, through the date of decision, September 19, 2024. (AR 32.)

Plaintiff sought timely review of the Commissioner's final decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 6, 7, 8.) Thereafter, the parties filed their briefs on the matter.[1] (ECF Nos. 12, 14.)

## II.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ failed to account in the RFC for all the limitations credited in the opinion of Kellie R. Sulier, Psy. D. (ECF No. 12, pp. 8-13.) Second, Plaintiff contends that the ALJ erred in her analysis of the medical opinions of Dr. Sulier generally. (Id. at pp. 13-19.) The Commissioner opposes, taking Plaintiff's arguments as collapsing into each other and arguing that substantial evidence supports the ALJ's decision. (ECF No. 14.) Though the Court agrees with the Commissioner as to Plaintiff's second argument, the Court agrees with Plaintiff regarding the ALJ's translation of Plaintiff's limitation

on persisting throughout a workday into the RFC.

**A. Analysis of Medical Opinions**

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original). In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the *most*." Id. (emphasis in original). An ALJ assesses an RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). This includes "any statements . . . provided by medical sources, whether or not they are based on formal medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, prior administrative medical findings ("PAMFs"). Id.

Under the Social Security Administration's 2017 revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022), quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 2017 WL 168819 (F.R. Jan. 18, 2017). "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." Id., quoting 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2). With that said, it remains for "the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020), quoting Treichler, 775 F.3d at 1098.

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." Woods, 32 F.4th at 792,

citing 20 C.F.R. § 404.1520c(c)(3). Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." Id., citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v). That said, "the ALJ no longer needs to make specific findings regarding these relationship factors." Id.

**1. Kellie Sulier, Psy. D.**

**a. Supportability and Consistency**

The Court takes Plaintiff's second argument first. Plaintiff argues that the ALJ erred in her analysis of Dr. Sulier's opinion as to both supportability and consistency. The Court disagrees.

In the decision, the ALJ discussed that,

> the claimant attended a psychological consultative examination conducted by Kellie Sulier, Psy.D. (C31F). During this examination, the claimant exhibited anxious mood, and impaired concentration (C31F/4). However, the remaining mental examination findings were normal, including those detailing the claimant's memory, judgment, insight, cooperation, thought processes, and intelligence (C31F/4-5)..

(AR 28.)

The ALJ the later summarized and analyzed Dr. Sulier's opinion as follows:

> Dr. Sulier opined that the claimant had mild to moderate limitations in completing a normal workday and workweek, was moderately limited in interacting with coworkers and the public, and was moderately limited in dealing with usual stresses. This opinion is partially supported: the findings of anxiety and impaired concentration do support limitations on persisting throughout a workday, but the normal findings (e.g. the claimant was cooperative, made good eye contact, had intact, linear thought content) (C31F/4-5), otherwise do not support moderate limitations in interacting with others or dealing with stress. Specifically, these findings are not consistent with the claimant's limited mental health treatment, through medication manage (e.g. C23F/8), and with his recent PHQ-2 depression screening scores of 0, indicating minimal depression symptoms (e.g. C34F/6, C34F/10, C34F/23, C34F/27, C38F/1, C38F/7). As such, these portions of Dr. Sulier's opinion are not persuasive, as they are neither supported by her observations, nor consistent with the record.

(AR 29.)

To begin with, the Court observes that Dr. Sulier limited her opinion regarding Plaintiff as

from "a psychological standpoint alone." (AR 1611.) Turning to supportability, the ALJ found Dr. Sulier's limitation on persisting throughout a workday was supported by Dr. Sulier's findings of anxiety and impaired concentration. (AR 29.) However, the ALJ found that Dr. Sulier's opinion that Plaintiff had moderate limitations in interacting with others or dealing with stress was not supported by Dr. Sulier's other "normal findings (e.g. the claimant was cooperative, made good eye contact, had intact, linear thought content)." (Id.) As to consistency, the ALJ found that Dr. Sulier's findings regarding interacting with others or dealing with stress were not consistent with Plaintiff's "limited mental health treatment, through medication manage (e.g. C23F/8), and with his recent PHQ-2 depression screening scores of 0, indicating minimal depression symptoms . . . ." (Id.) Thus, the ALJ found Dr. Sulier's opinion regarding interacting with others or dealing with stress were not persuasive.

Plaintiff begins with the striking argument that *any* conflation of the supportability and consistency factors, without separate analyses for each factor, "renders the ALJ's analysis insufficient under the regulations." (ECF No. 12, p. 14.) The Court is not so sure such a rule has been endorsed by the Ninth Circuit. Indeed, in Woods v. Kijakazi, the seminal case following the 2017 revisions to the Regulations, the Ninth Circuit, in a footnote, observed that though the ALJ in that case had used the word "supported," in reality the ALJ had engaged in a consistency analysis. 32 F.4th at 793 n.4. The Court stated that, "[a]lthough the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs *should* endeavor to use these two terms of art—'consistent' and 'supported'—with precision." Id. (emphasis added). Thus, the Ninth Circuit seemingly determined that an ALJ's use of the wrong term (*i.e.*, consistency or supportability) may be harmless so long as the from context it is clear what the ALJ meant as to consistency and/or supportability. Though the Court admonished ALJs to use these terms with precision, the Ninth Circuit did not, from this Court's reading, suggest the rule Plaintiff has proffered or at least as how it is formulated in his briefing. Thus, this argument is not persuasive.

Plaintiff also generally argues that the ALJ's analysis of Dr. Suler's opinion was "cursory," but as analyzed above, the Court finds that this general argument is without merit.

Next, Plaintiff argues that the ALJ "cherry-picked . . . the evidence to manufacture support

for [her] rejection of the moderate limitations assessed by Dr. Sulier." (ECF No. 12, p. 15.) Specifically, Plaintiff directs the Court to Dr. Sulier's note that Plaintiff "endorsed mental health symptoms of anxiety and depression. [Plaintiff] reports feeling sad, worthless, irritable, with decreased stress tolerance. Anxious symptoms are reported as chest tightness, sweating, shortness-of-breath, fearfulness, and desperation. [Plaintiff] states, 'It's from pain and not being able to work.'" (AR 1608.) Plaintiff also points to Dr. Suler's mental status exam as to attention, which states: "Impaired. [Plaintiff] was able to recite a minimum of 5 digits forward and 2 of 5 digits in reverse." (AR 1610.) Next, Plaintiff points to Dr. Suler's mental status exam as to concentration, "Impaired. [Plaintiff] made 0 errors spelling 'World' forward and made 1 error spelling it in reverse. [Plaintiff] was not able to complete serial 3's adequately." (Id.) For memory, Dr. Sulier found, "Fair. [Plaintiff] recalled 2 out of 3 words after a brief delay." (Id.) And for mood, Dr. Sulier found Plaintiff was anxious with an affect congruent to mood. (AR 1611.)

Though these are the findings of Dr. Sulier, the ALJ cited to Dr. Sulier's normal findings, including that Plaintiff's attitude was "cooperative," "[e]ye contact was made [was] good," and Plaintiff's thought content was "Intact. Linear and logical." (AR 1609-11.)

Significantly, the Court observes that the ALJ explicitly rejected only Dr. Sulier's opinion insofar as finding that Plaintiff had moderate limitations in interacting with others or dealing with stress. Though Plaintiff has identified other findings by Dr. Sulier, Plaintiff has not explained how they necessarily would affect issues of interacting with others or dealing with stress. For example, attention, concentration, and memory do not appear to directly address issues of interaction with others or dealing with stress. Moreover, though mood arguably could bear on these issues, Dr. Sulier's finding was that Plaintiff was anxious, with matching affect, without further explanation of how this would impact interacting with others or dealing with stress. Finally, Plaintiff cites to Dr. Sulier's recording of Plaintiff's subjective complaints of feeling sad, worthless, irritable, with decreased stress tolerance, as well as reported anxious symptoms. These are not necessarily observed findings or conclusions of Dr. Sulier. Thus, the Court finds the ALJ did not cherry-pick but addressed evidence that was only relevant to the ALJ's findings.

Plaintiff then attacks consistency, arguing that the ALJ erred by citing Plaintiff's PHQ

score of 0. To that finding, Plaintiff cites to a note that on November 9, 2021, Plaintiff scored a PHQ score of 20 and that Plaintiff was assessed with major depressive disorder, severe. (AR 1486, 1488.) Yet, Plaintiff ignores that the ALJ cited to six records where Plaintiff scored a PHQ score of 0, spanning February, March, May, and July 2023, as well as March and May 2024 . (AR 29, citing AR 1665, 1669, 1682, 1686, 1773, 1779.) The Court finds that the ALJ did not err in using consistent PHQ scores in 2023 and 2024 for discussing consistency in Dr. Sulier's opinion. Moreover, Plaintiff's argument regarding the waxing and waning of symptoms is belied by the cited record. Though Plaintiff had a PHQ score of 20 in 2021, in most of 2023, and the beginning of 2024, Plaintiff consistently had a PHQ score of 0. This is not in accord with the line of cases to which Plaintiff has cited. In other words, this does not appear to be an "isolated incidence of improvement." (ECF No. 12, p. 18.)

Thus, the ALJ did not err in the supportability and consistency analysis of Dr. Sulier.

**b. Translation of Limitations into RFC**

Plaintiff argues that though the ALJ credited Dr Sulier's opinion regarding mild to moderate limitations in completing a normal workday and workweek, that part of Dr. Sulier's opinion was not translated into the RFC. (ECF No. 12, p. 8.) The Commissioner responds, observing that Dr. Sulier did not give concrete definitions of mild-to-moderate as to this limitation, and therefore it is ultimately up the ALJ to translate the finding into a concrete finding about the RFC. Thus, the Commissioner argues that the ALJ accomplished this by limiting Plaintiff to simple work. Here, the Court agrees with Plaintiff.

To begin, recall the RFC provided the following mental limitation: "[Plaintiff] can understand, remember, and carry out simple instructions." (AR 26.) After reviewing the entire decision, the Court finds that the ALJ did not adequately discuss how the credited portion of the opinion of Dr. Sulier regarding anxiety and impaired concentration, which the ALJ found supported a limitation on persisting throughout a workday, was translated into the RFC. See Rounds v. Commissioner of Socal Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."), citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

Both sides cite to Stubbs-Danielson v. Astrue, where two medical opinions were at issue. The first opinion identified the plaintiff as "'moderately limited' in her ability to 'to perform at a consistent pace without an unreasonable number and length of rest periods' and 'mildly limited' in several other mental functioning areas . . ." 539 F.3d at 1173. The first opinion did not assess whether the plaintiff "could perform unskilled work on a sustained basis." Id. The second opinion identified "'a slow pace, both in thinking & actions' and several moderate limitations in other mental areas, ultimately concluded [the plaintiff] retained the ability to 'carry out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading.'" Id. The Ninth Circuit explained that the ALJ had not erred by translating these limitations in the RFC to a restriction to "simple tasks." Id. In so doing, the Ninth Circuit held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." Id. at 1173-74. Thus, the Court rejected the plaintiff's argument that by crediting and importing the second opinion's restriction into the RFC the ALJ had necessarily discredited the first opinion.

Here, there is no other relevant medical testimony regarding Plaintiff's mental limitations. Though the ALJ discussed the state agency consultants' opinions regarding Plaintiff's mental limitations, the ALJ noted that later submitted evidence[4] (not medical testimony) tended to demonstrate "moderate limitations in concentration, and only performing simple instruction sets due to anxiety and depression symptoms." (AR 29.) Thus, the Court finds that Stubbs-Danielson does not appear to be directly on point to this case where there is no other medical testimony to support that by limiting Plaintiff to understand, remember, and carry out simple instructions that this thereby addressed Dr. Sulier's opinion regarding anxiety and impaired concentration—which the ALJ found supported a limitation on persisting throughout a workday.

The Commissioner's other offered precedent is likewise inapposite and/or unpersuasive. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (noting that the medical testimony included marked/mild-to-moderate limitations in concentration and that the ALJ then asked the VE whether

[4] The ALJ did not identify or otherwise discuss what evidence specifically was later submitted. (AR 29.)

"low ability to concentrate for sustained periods of time" would permit the plaintiff "to perform these unskilled jobs," to which the VE stated "[i]f a job is unskilled, the tasks are very simple and I wouldn't think there would be a problem"); see Hoopai v. Astrue, 499 F.3d 1071, 1075-77 (9th Cir. 2007) (observing that the ALJ relied upon the grids, and not a VE, and affirming the ALJ's use thereof because "[the Court has] not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation").

The Court addresses the Commissioner's heavy reliance on Kitchen v. Kijakazi. 82 F.4th 732, 739 (9th Cir. 2023). In Kitchen, the Ninth Circuit discussed that—in the context of the plaintiff's subjective complaints—the ALJ did not err by finding that the plaintiff's subjective complaints were not supported by the mental-medical testimony that demonstrated only "mild" or "moderate" symptoms. Thus, the Ninth Circuit did not hold, as the Commissioner suggests, that "evidence of mild to moderate mental impairments [does] not establish disability." (ECF No. 14, p. 7.) Rather, this section in Kitchen appears to be a routine analysis of whether the ALJ's analysis of a claimant's subjective complaints was supported by substantial evidence. This section has no relevance to the issue of adequately translating a credited medical opinion into an RFC. The medical opinions later discussed in Kitchen are likewise inapposite to the case at bar. See id. at 740-41.

Finally, the Commissioner does not articulate how this error could be considered harmless nor is such reasoning readily apparent to the Court. Indeed, "[i]n order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956, quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995); see Valentine v. Commissioner of Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."). Therefore, this error requires remand.[5]

/ / /

[5] The Court has considered the parties' remaining arguments and finds them either unpersuasive or unnecessary to reach in light of the findings herein.

## IV.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and REMANDED for further proceedings. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Jeffrey W. Vaughn and against the Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **October 26, 2026**

STANLEY A. BOONE
United States Magistrate Judge